Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GRCDALLASHOMES LLC,** | § | **CASE NO. 19-41186-btr** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## <u>DISCLOSURE STATEMENT DATED SEPTEMBER 9, 2019</u>

**UST - 4**

# TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ................................................................................................3

ARTICLE II - REPRESENTATIONS..........................................................................................10

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR ......................................................11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY............................................12

ARTICLE V- SUMMARY OF THE PLAN ...............................................................................14

ARTICLE VI - ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS
   AND UNEXPIRED LEASES...............................................................................................20

ARTICLE VII - FEASIBILITY OF PLAN .................................................................................20

ARTICLE VIII - ALTERNATIVES TO DEBTOR'S PLAN ......................................................21

ARTICLE IX - RISKS TO CREDITORS UNDER DEBTOR'S PLAN .....................................21

ARTICLE X - TAX CONSEQUENCES TO THE DEBTOR......................................................21

ARTICLE XI - PENDING LITIGATION....................................................................................24

ARTICLE XII - SUMMARY OF SIGNIFICANT
   ORDERS ENTERED DURING THE CASE .......................................................................25

EXHIBITS:
   First Plan of Reorganization Dated September 9, 2019.....................................................1
   Claims Summary and Plan Payment Schedule..................................................................2
   Real Property Valuation....................................................................................................3

# ARTICLE I

## INTRODUCTION

### Identity of the Debtor

**1.01**    Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on May 3, 2019, in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court"), initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

### Purpose of This Disclosure; Source of Information

**1.02**.    Debtor submits this Disclosure Statement pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Member of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan. A copy of the Plan is attached hereto as ***Exhibit "1"*** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Debtor and its creditors. This Disclosure describes the operations of the Debtor contemplated under the Plan. Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

### Explanation of Chapter 11

**1.03**    Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### Explanation of the Process of Confirmation

**1.04**    Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court.  Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants.  It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05**    Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually

voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

     **1.06**    The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

     **1.07**    Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

     **1.08**    <u>**Unimpaired Class**</u>. There are no unimpaired classes under the Plan.

     **1.09**    <u>**Impaired Classes**</u>. The Classes 1, 2, 3, 4, 5, 6, 7, and 8 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 1, 2, 3, 4, 5, 6, and 8. Each holder of an Allowed Claim in Classes 1, 2, 3, 4, 5, 6, and 8 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant eligible to vote on the Plan. For all Classes, the ballot must be returned to Debtor's attorney, Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, 12720 Hillcrest Road, Suite 625, Dallas, Texas 75230 by mail, email at [joyce@joycelindauer.com](mailto:joyce@joycelindauer.com), or facsimile at (972) 503-4034. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

     **1.10**    <u>**Acceptances**</u>. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

### Best Interests of Creditors Test

     **1.11**    Section 1129(a)(7) of the **Code** requires that each impaired class of claims or interests accept the **Plan** or receive or retain under the **Plan** on account of such claim or interest, property of a value as of the **Effective Date** of the **Plan**, that is not less than the amount that such holder would so receive or retain if the **Debtor** were liquidated under Chapter 7 of the Bankruptcy **Code**. If Section 1111(b)(2) of the **Code** applies to the claims of such class, each holder of a claim of such class will receive or retain under the **Plan**, on account of such claim, property of a value, as of the **Effective Date** of the **Plan**, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the **Plan** to be confirmed, the **Court** must determine that the **Plan** is in the best interests of the **Debtor**'s creditors. Accordingly, the proposed plan must provide the **Debtor**'s creditors with

more than they would receive in a Chapter 7 liquidation. Accordingly, the **Plan** proposes to pay secured creditor Claims in full and all unsecured creditor claims more than Debtor believes they would receive in Chapter 7 liquidation. Accordingly, the Debtor believes the **Plan** satisfies the requirements of Section 1129(a)(7).

## Cramdown

1.12    The **Court** may confirm the **Plan** even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**. Accordingly, **Debtor**, as the plan proponent, requests the **Court** to determine that the **Plan** does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting below.

## Definition of Impairment

1.13    As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

(a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

(b)    notwithstanding any contractual provision or applicable law that entitles the holder or a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

(i)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

(ii)    reinstates the maturity of such claim or interest as it existed before such default;

(iii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(iv)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## Classification and Treatment of Claims and Interests

1.14    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

1.15    Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed

Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

    **1.16**   In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

<u>**Requirements for Confirmation of the Plan**</u>

    **1.17**   At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in Section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A)    The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under

chapter 7 of the Bankruptcy Code on such date; or (ii) if Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(i)     such class has accepted the plan; or

(ii)     such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i)     with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)     with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## <u>Cramdown</u>

**1.18** The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.19** "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in Section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of **secured claims**, the plan provides:

(a)  (i)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of

the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)  for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)  the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of **unsecured claims**, the plan provides:

(a)  that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under Section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of **interests**, the plan provides:

(a)  that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or
(b)  that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

    **1.20**    In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASSES OF UNSECURED CREDITORS VOTE FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE. The absolute priority rule requires that prior to the Debtor retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan. The Plan also contemplates a cancellation of equity interests and a reissuance for new value. This is another way to avoid the effect of the absolute priority rule.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

**II.**

**<u>REPRESENTATIONS</u>**

**2.01** This Disclosure is provided pursuant to Section 1125 of the **Code** to all of the **Debtor**'s known **Creditors** and other parties in interest in connection with the solicitation of acceptance of its **Plan** of reorganization, as amended or modified. The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of **Claims**, to make an informed judgment in exercising its rights either to accept or reject the **Plan**.

**2.02** The information contained in this Disclosure has been derived from information submitted by the **Debtor**, unless specifically stated to be from other sources.

**2.03** No representations concerning the **Debtor** are authorized by the **Debtor** other than those set forth in this Disclosure. The **Debtor** recommends that any representation or inducement made to secure your acceptance or rejection of the **Plan** which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the **Plan**. Any representation or inducement made to you not contained herein should be reported to the attorneys for **Debtor** who shall deliver such information to the **Court** for such action as may be appropriate.

**2.04** ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05** THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06**    THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07**    DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## III.
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

**3.01**.    The Debtor purchases, rehabilitates, repairs, an resells residential real property in the Dallas-Fort Worth area. As of the filing of this Disclosure Statement, Debtor owns the following properties:

> 2205 Oak Grove Parkway, Little Elm, TX
>
> 4430 Chapman, The Colony, TX
>
> 2029 Chatsworth, Carrollton, TX
>
> 2408 Jewell Drive, Arlington, TX
>
> 6012 Mayes, The Colony, TX
>
> 1005 Shady Lane, Keller, TX
>
> 7629 Lakeview, The Colony, TX
>
> 2046 Greenstone, Carrollton, TX
>
> 203 Oak Street, Highland Village, TX
>
> 4369 Sunset Circle, The Colony, TX
>
> $1/3^{rd}$ of 6900 Elliott, The Colony, TX

Kazem Daneshmandi is the Member of the Debtor and has a number of years of experience in the house rehabilitation industry. He has been responsible for managing the day-to-day operations of the Debtor, including without limitation, selecting properties for purchase, setting goals, managing Debtor financials and budgeting, managing rehabilitation and repair, and ultimately selling the rehabilitated properties for a profit.

**Events Leading to Filing of Bankruptcy**

1.      Revenue: Debtor's revenue has declined over the past two years. The revenue is set forth as follows: gross income for 2017 was $5,698,658.00, for 2018 was $1,100,000.00, and for year-to-date 2019 (as of the Petition Date) was $317,000.00.

2.      Expenses: The Debtor's expenses fluctuate by project based upon each property's rehabilitation requirements. Debtor's overhead expenses are well within the industry's standards for a comparable entity of its size the area.


The Debtor believes that, with the employment of the Plan Agent, it is positioned to meet its obligations under the Plan

**Future Income and Expenses Under the Plan**

**3.02.**    The **Debtor's** Claims Summary and Plan Payment Schedule is attached hereto as ***Exhibit "2".***    The Debtor will fund the Plan from the Debtor's sale of properties.

**Future Management of the Debtor**

**3.03.**    The **Plan** contemplates that the Plan Agent will oversee the orderly liquidation with the  assistance of Kazem Daneshmandi.

**IV.**
**ANALYSIS AND VALUATION OF PROPERTY**

**Real Property**

**4.01.**    The **Debtor** owns the real property identified above. The total value of such property is scheduled at $1,685,000.00. The Debtor's present opinion of total value "AS IS" is $1,596,662.00. Debtor forms its basis for the opinion of value from the professional opinion of Mr. Daneshmandi, based upon his knowledge of the market and years of experience. The Debtor does not have a current appraisal of the properties. The **Debtor's** Real Property Valuations are set forth on ***Exhibit "3"*** attached hereto.

**Personal Property**

**4.02.**    The **Debtor** owns the personal property described as follows, and valued as of the Petition Date:

| Property | Value |
|---|---|
| Cash | $0.00 |
| Bank Accounts | $248,063.84 |
| 2005 SmartCar (non-functional) | $2,000.00 |

| 2004 Mitsubishi Fuso (non-functional) | $5,000.00 |
| --- | --- |
| www.grctexas.com | $0.00 |
| Causes of Action against Sarah Clark | $7,500.00 |
| Causes of Action against the Stenders | $100,000.00 |
| Causes of Action against Jose Garcia | $500.00 |
| Causes of Action against Clay Stapp | $300,000.00 |
| Causes of Action against Tim Autry | $30,000.00 |

**4.03**.    The Debtor does not have a current appraisal on the personal property.  The Debtor values the personal property as appropriate on its age and condition. The claims against individuals are subject to collection making them worth significantly less. Together the real and personal property may be worth approximately $1,851,725.84 based on the Debtor's opinion.  If forced to liquidate in a rapid fashion, the Debtor contends that none of the personal property causes of action would yield value and that only about 75% of the remaining real property's actual value would be realized.

Debtor estimates total secured claims, based upon scheduled amounts and filed proofs of claim, to be $735,219.09. Debtor estimates total unsecured claims, on the same basis, to be $2,642,819.29.

### Liquidation Value of Assets

| Property | Value | Secured Debt | Equity |
| --- | --- | --- | --- |
| Real Property | $1,197,496.50 | $735,219.09 | $462,277.41 |
| Personal Property | $255,063.84 | $0.00 | $255,063.84 |

In such a liquidation, unsecured creditors would receive approximately27.14% of their respective claims without including the costs of liquidation.

### Plan and Orderly Liquidation Value of Assets

| Property | Value | Repair Cost | Secured Debt | Equity |
| --- | --- | --- | --- | --- |
| Real Property | $2,151,662.00 | $343,333.33 | $735,219.09 | $1,073,109.58 |
| Personal Property | $693,063.84 | - | $0.00 | $693,063.84 |

Under the Plan and orderly liquidation, Debtor projects that the actual value of the remaining real property would be realized and that the personal property causes of action would yield closer to their stated values although you still have the issues regarding collectability. Debtor estimates that with an expenditure of approximately $343,333.33 toward rehab and repair of the real properties, an additional $550,000 of value can be created, for a net gain of $211,666.67 (equating to a 59.8% return on investment). Therefore, under the Plan and orderly liquidation, unsecured creditors

would receive significantly greater return, estimated at 66.83% Make sure your numbers make sense of their respective claims.

**4.04**.   The Debtor also continues to dispute the Class 5 claim of Statebridge with regard to 4437 Jenkins. Debtor does not believe it has liability for this obligation, as the title company that closed the prior sale of that real property by Debtor failed to tender payment to the secured lender at closing and obtain the requisite release. Debtor believes this may be actionable under the owner's policy of title insurance. Likewise, Debtor intends to seek resolution of this issue through the legal remedies available to it. If favorably resolved, Class 7 and Class 8 unsecured claims would likely receive an increase in total payments.

**V.**
**SUMMARY OF THE PLAN**

Revise Based on Plan Revisions All Claims and Interests, except Administrative Claims, Professional Fee Administrative Claims, and Priority Unsecured Tax Claims are placed in the Classes set forth below, in accordance with section 1123(a)(1) of the Bankruptcy Code.

**Administrative Claims.**   Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided, however*, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor shall pay or have paid in full all Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. §1930. All fees payable pursuant to 28 U.S.C. §1930 after the Effective Date shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion.  Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law. Nothing herein shall require Dallas County to file an administrative expense claim or request for payment.

**Professional Fee Administrative Claims.** All persons that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Allowed Administrative Expenses.** Allowed Administrative Expenses will be paid in full once Allowed, on or before the Effective Date, or at a later date as set by the Court if

the allowance process extends beyond the Effective Date. Provided, however, that the holder of an Allowed Administrative Expense may agree to a different treatment.

**Treatment of Allowed Priority Tax Claims.** Allowed Priority Tax Claims will be paid by the Reorganized Debtor, once Allowed, over five (5) years with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

**Title 28 U.S.C. Section 1930 Fees.** Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

**Class 1 / Allowed Secured Ad Valorem Tax Claims of Taxing Authorities**.  Class 1 shall consist of the Allowed Secured Ad Valorem Tax Claim of the Taxing Authorities on the Debtor's real property which accrued on or prior to May 3, 2019 (the "**Class 1 Claims**").

a. <u>Impairment and Voting</u>.  Class 1 Claims are impaired by the Plan.  The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>.  The holders of Class 1 Claims shall be paid in full over 60 months following the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan.  The Class 1 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. Such default must be cured by the Debtor within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 1 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Class 1 Claimants shall provide a notice of default to Debtor's counsel by facsimile or email.  The Class 1 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 1 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.  All liens shall be retained to secure the taxes owed.

c. In the event of a sale of real property all Class 1 Claims secured against the real property being sold shall be paid in full at closing in exchange for a release of the associated lien.

**Class 2 / Allowed Priority Claim of the Internal Revenue Service**.  Class 2 shall consist of the Allowed Priority Claim of the Internal Revenue Service which accrued on or prior to May 3, 2019 (the "**Class 2 Claims**") in the estimated amount of <u>$1,000.00</u>.

    a.    <u>Impairment and Voting</u>.  Class 2 Claims are impaired by the Plan.  The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

    b.    <u>Treatment</u>.  The holders of Class 2 Claims shall be paid in full over 60 months following the Confirmation Date. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 12.0% per annum following the Effective Date until paid in full. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. Such default must be cured by the Debtor within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Class 2 Claimants shall provide a notice of default to Debtor's counsel by facsimile or email.  The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

    c.    In the event of any sale, Class 2 Claims shall be paid in full at closing after all claims secured against the property sold.

**Class 3 / Allowed Secured Claim of Statebridge – 6012 Mayes Place**.  Class 3 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 6012 Mayes Place, The Colony, Texas 75065, which accrued on or prior to May 3, 2019 (the "**Class 3 Claims**") in the estimated amount of <u>$153,456.66</u>.

    a.    <u>Impairment and Voting</u>.  Class 3 Claims are impaired by the Plan.  The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

    b.    <u>Treatment</u>.  The holders of Class 3 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60

months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c. Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d. In the event of a sale of 6012 Mayes Place, Class 3 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e. All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**Class 4 / Allowed Secured Claim of Statebridge – 1005 Shady Lane**.  Class 4 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 1005 Shady Lane, Keller, Texas 76428, which accrued on or prior to May 3, 2019 (the "**Class 4 Claims**") in the estimated amount of <u>$174,818.45</u>.

a. <u>Impairment and Voting</u>.  Class 4 Claims are impaired by the Plan.  The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>.  The holders of Class 4 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c. Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d. In the event of a sale of 1005 Shady Lane, Class 4 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e.  All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**Class 5 / Allowed Secured Claim of Statebridge – 4437 Jenkins**.  Class 5 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 4437 Jenkins, The Colony, Texas, which accrued on or prior to May 3, 2019 (the "**Class 5 Claims**") in the estimated amount of $107,000.00.

a.  <u>Impairment and Voting</u>.  Class 5 Claims are impaired by the Plan.  The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

b.  <u>Treatment</u>.  The holders of Class 5 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c.  Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d.  In the event of a sale of 4437 Jenkins, Class 5 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e.  All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**Class 6 / Allowed Secured Claim of Wells Fargo Mortgage – 2046 Greenstone**.  Class 6 shall consist of the Allowed Secured Claims of Wells Fargo Mortgage on the Debtor's real property commonly known as 2046 Greenstone Trail, Carrollton, Texas 75010, which accrued on or prior to May 3, 2019 (the "**Class 6 Claims**") in the estimated amount of $128,894.52.

a.  <u>Impairment and Voting</u>.  Class 6 Claims are impaired by the Plan.  The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

b.  <u>Treatment</u>.  The holders of Class 6 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after

the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Wells Fargo Mortgage at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Wells Fargo Mortgage for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c.    Wells Fargo Mortgage shall retain its lien to secure its claim until paid in full under this Plan.

d.    In the event of a sale of 2046 Greenstone, Class 6 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e.    All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**Class 7 / Allowed Claim of Touba Daneshmandi**.  Class 7 shall consist of the Allowed Claim of Touba Daneshmandi, secured on the Debtor's real property, for a business loan, which accrued on or prior to May 3, 2019 (the "**Class 7 Claims**") in the estimated amount of $1,187,863.00.

a.    Impairment and Voting.  The Class 7 Claim is impaired by the Plan.  The holder of the Class 7 Claim is **not** entitled to vote to accept or reject the Plan as Touba Daneshmandi is an insider to the Debtor.

b.    Treatment.  The holder of the Class 7 Claim shall be paid in full prior to the expiration of 60 months from the Confirmation Date. On the occurrence of a sale of real property, the holder of the Class 7 Claim shall be paid from the Creditor's Pool along with the Class 8 Allowed Claims based on fifty (50) percent of the Allowed Claim Amount until the Class 7 Claim is paid in full.

c.    ALL terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**Class 8 / Allowed General Unsecured Claims**.  Class 8 shall consist of Allowed General Unsecured Claims and is estimated to be approximately $1,454,956.29. The Debtor has not filed claims objections and may object to certain of the unsecured claims.

a.    Impairment and Voting.  Class 8 is impaired by the Plan.  The holders of Class 8

Claims are entitled to vote to accept or reject the Plan.

b. _Treatment_.  Each holder of an Allowed General Unsecured Claim shall be paid their pro-rata share from the Creditor's Pool along with the Class 7 Allowed Claim based on fifty percent of the Allowed Claim Amount until the Class 8 Claims are paid in full.

Class 8 Claims shall receive payments under the Plan as soon as possible after payments to senior secured Allowed Creditor Classes. The Plan projects to pay such claims at a rate of 50% of each Allowed General Unsecured Claim.

**Class 9 / Allowed Equity Interests**.  Class 9 shall consist of all Allowed Interests in the Debtor.

a. _Impairment and Voting._  Class 9 are not impaired by the Plan. And are not entitled to vote to accept or reject the Plan. Members of the Debtor shall retain their interest in the Debtor post-confirmation.

## VI.
## ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01**   Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all by separate Motions unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date.  All contracts not assumed shall be rejected.

## VII.
## FEASIBILITY OF PLAN

**7.01**   Debtor asserts that this plan is does not have to be feasible since it is an orderly liquidation.  There are sufficient cash funds on hand to make monthly payments and cover Allowed Administrative Expenses and Fees.

**Procedure for Filing Proofs of Claims and Proofs of Interests**

**7.02.**   All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**7.03.**   If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours.  If the equity security interest of an Equity Interest Holder is properly reflected in the Debtor, a proof of interest need not be filed.

# VIII.
## ALTERNATIVES TO DEBTOR'S PLAN

**8.01** If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to rapidly liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Since the Debtor's assets are mortgaged and in need of repair Debtor projects that there would be a significant lesser distribution to creditors in Chapter 7 Plus the costs of administration would be significantly higher.

# IX.
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

**9.01** Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that the Debtor's orderly liquidation will generate revenue sufficient to exceed expectations under a Chapter 7 liquidation. The Debtor does not "guarantee" that the expenses will equal those in the projections; however, the Debtor believes that the projections are reasonable.

# X.
## TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States

federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009. The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest**.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions
Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"*COD*" shall mean cancellation of indebtedness income.
"*NOL*" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, the Tax Code permits

the Debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the Debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor will have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation.   Although the Plan allows for an ownership change it is doubtful that one will occur and as such any owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if

any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## XI.
## PENDING LITIGATION

**11.01**. As of the date of the filing of the following matters are pending:

a. John Caldwell v. GRCDallasHomes LLC and Kazem Daneshmandi, Cause No. 17-10604-442, pending in the 462nd Judicial District Court of Denton County, Texas.

b. GRCDallasHomes LLC v. Tsegu Rusomm, Cause No. 17-8003-431, pending in the 431st Judicial District Court of Denton County, Texas.

c. Bryan Wing Cheung Poon v. GRCDallasHomes LLC and Kzem Dashmandi, Cause No. 16-06333-431, pending in the 462nd Judicial District Court of Denton County, Texas.

d. GRCDallasHomes, LLC v. Pamela Freeman, Cause No. 17-2987-431, pending in the 431st Judicial District Court of Denton County, Texas.

**11.02**. As of the date of filing the following matters are anticipated:

a. Pursue cause of action against Sarah Clark for breach of contract of contract on purchase of property and repairs to 4208 Ireland, The Colony, Texas;

b. Pursue cause of action against Tisha and William Stender for breach of contract regarding 5212 Kisor, The Colony, Texas;

c. Pursue cause of action against Jose Garcia for breach of contract regarding 6012 Mayes, The Colony, Texas;

d. Pursue cause of action against Clay Stapp for non-performance of settlement agreement;

e. Pursue cause of action against Tim Autry for breach of contract and fraud for monies loaned regarding 6900 Elliott, The Colony, Texas.

## XII.
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**12.01**. As of the date of the filing of this Disclosure the following significant orders have been entered in this case:

a. Order Granting Debtor's Application to Employ Counsel (Joyce W. Lindauer Attorney, PLLC);

b. Order Modifying Automatic Stay to Allow Entry of Final Judgment and Related Relief (Cause No. 17-10604-442, pending in the 462nd Judicial District Court of Denton County, Texas);

c. Order Granting Amended Motion to Sell Real Property Free and Clear of Liens, Claims, and Encumbrances (Re: 1418 Lakeshore Blvd., Little Elm, TX 75068);

d. Order Granting Amended Motion to Sell Real Property Free and Clear of Liens, Claims, and Encumbrances (Re: 3405 Janlyn Lane, Farmers Branch, Texas 75234);

e. Order Granting Amended Emergency Motion to Allow Disbursement of Sale Proceeds;

f. Order Granting Nunc Pro Tunc Motion to Pay Real Property Taxes;

g. Order Granting Debtor's Application to Employ Special Counsel Pursuant to 11 U.S.C § 328(a) (Rod B. Khavari and Khavari & Moghadassi, Attorneys at Law, P.C.); and

h. Chapter 11 Agreed Scheduling Order.

Dated: September 9, 2019

Submitted by:

 /s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
Telephone:     (972) 503-4033
Facsimile:      (972) 503-4034
Email: joyce@joycelindauer.com
        jeff@joycelinduar.com
**ATTORNEYS FOR DEBTOR**

 /s/ Kazem Daneshmandi
Kazem Daneshmandi, *Member*

Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GRCDALLASHOMES LLC,** | § | **CASE NO. 19-41186-btr** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## FIRST PLAN OF REORGANIZATION DATED SEPTEMBER 9, 2019

    GRCDALLASHOMES LLC (the "Debtor"), proposes the following First Plan of Reorganization ("Plan") Dated September 9, 2019, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Debtor is filing periodic financial reports with the Court, as required by the Code, covering the Debtor's profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txeb.uscourts.gov using the Debtor's name and/or case number as referenced above.



# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ................................................................. 3

ARTICLE II - GENERAL TERMS AND CONDITIONS........................................................... 8

ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS...... 9

ARTICLE IV - MEANS OF EXECUTION AND IMPLEMENTATION................................... 16

ARTICLE V- EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 19

ARTICLE VI - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS........... 20

ARTICLE VII - EFFECT OF CONFIRMATION........................................................................ 20

ARTICLE VIII - MISCELLANEOUS PROVISIONS................................................................. 21

ARTICLE IX - RETENTION OF JURISDICTION ................................................................... 23

# ARTICLE I
## DEFINITIONS AND USE OF TERMS

**A.     Scope of Definitions**

For the purpose of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used herein unless otherwise defined herein, shall have the meanings ascribed to them in this Article I of the Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.     Definitions**

Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Article I, Section B.

**1.01.     "Ad Valorem Tax"** shall mean the tax assessed by a state or local governmental unit secured by the Debtor's personal or real property pursuant to state and/or local law.

**1.02.     "Ad Valorem Tax Claim"** shall mean a Claim for an Ad Valorem Tax.

**1.03.     "Administrative Claim"** shall mean a claim for payment of an administrative expense of a kind specified in section 503(b) or 507(b) of the Bankruptcy Code and including those entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) the actual and necessary costs and expenses, incurred after the Petition Date to, and including, the Confirmation Date, of preserving the bankruptcy estate and operating of the Debtor's business, Professional Fee Administrative Claims, any borrowing by the Debtor pursuant to pursuant to section 364 of the Bankruptcy Code, regardless of priority, all fees and charges assessed against the estate under Chapter 11 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**1.04.     "Allowed Administrative Claim"** shall mean an Administrative Claim as to which a timely request for payment has been made in accordance with Section 2.01 of the Plan (if such written request is required) or other Administrative Claim as to which the Debtor has not interposed a timely objection, or to which the Debtor has interposed a timely objection and such objection has been settled, waived through payment, withdrawn, otherwise satisfied in full, or denied by a Final Order of the Bankruptcy Court or another court of competent jurisdiction.

**1.05.     "Allowed Claim"** shall mean a Claim or any portion thereof in the amount and priority classification set forth in any proof of such Claim that has been timely filed, or in the absence of such proof, as set forth in the Debtor's Schedule of Liabilities, unless listed in the Debtor's Schedule of Liabilities as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only if a proof of such Claim has been timely filed; (i) as to which no

objection to allowance or request for estimation has been interposed on or before the date provided for herein or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, Bankruptcy Rules or the Bankruptcy Court, (ii) as to which any objection to its allowance has been settled, waived through payment, withdrawn, otherwise satisfied in full, or denied by a Final Order of the Bankruptcy Court or another court of competent jurisdiction, or (iii) that is expressly allowed in a liquidated amount in the Plan. An Allowed Claim shall not include any unmatured interest accruing after the Petition Date unless otherwise stated in the Plan.

**1.06.** **"Allowed General Unsecured Claim"** shall mean an Allowed Claim (i) which is not entitled to priority under section 507(a) of the Bankruptcy Code, (ii) which is not secured by a validly perfected enforceable lien or interest as defined in sections 101(37), (50) and (51) of the Bankruptcy Code, or (iii) an Allowed Claim arising from the rejection of an unexpired lease or executory contract. An Allowed General Unsecured Claim shall not include any Allowed Interest.

**1.07.** **"Allowed Interests"** shall mean any interest in the Debtor to the extent that such interest is listed in the Schedule of Liabilities or Statement of Financial Affairs of the Debtor on the Confirmation Date; provided however, that a timely filed Proof of Interest shall supersede any such listing and, in either case, an interest as to which no written objection to the allowance thereof has been interposed within the time period fixed by the Bankruptcy Code or by Final Order of the Court; or, if an objection has been interposed, to the extent allowed, in whole or in part, by Final Order of the Bankruptcy Court.

**1.08.** **"Avoidance Actions"** shall mean the claims, rights of action, suits, or proceedings that the Debtor or its bankruptcy estate may hold against any Person, whether known or unknown, under Chapter 5 of the Bankruptcy Code.

**1.09.** **"Bankruptcy Code" or "Code"** shall mean the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.10.** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, which has jurisdiction over the Bankruptcy Case.

**1.11.** **"Bankruptcy Rules"** shall mean, collectively, the Federal Rules of Bankruptcy Procedure and Official Bankruptcy Forms, adopted by the Supreme Court of the United States, as now in effect or hereafter amended.

**1.12.** **"Bar Date"** shall mean the date set by the Court.

**1.13.** **"Bankruptcy Case" or "Case"** shall mean the case under Chapter 11 of the Bankruptcy Code, commenced by the Debtor, styled In re GRCDALLASHOMES LLC, Case Number 19-41186-btr, currently pending before the Bankruptcy Court, including any related adversary or other ancillary proceeding.

**1.14.** **"Cash"** shall mean legal tender of the United States of America or any equivalents thereof.

**1.15.** **"Claim"** shall mean a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.16.** **"Claimant"** shall mean any person or entity having or asserting a Claim in the case.

**1.17.** **"Claim Objection Bar Date"** shall mean the date on or before which the Debtor shall have filed any and all objections to the allowance of Claims for distribution purposes. The Claim Objection Bar Date is thirty (30) days after the Effective Date of the Plan.

**1.18.** **"Collateral"** shall mean any property or interest in property of the Debtor's bankruptcy estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.19.** **"Confirmation Date"** shall mean the date of entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

**1.20.** **"Confirmation Hearing"** shall mean the hearing held before the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code.

**1.21.** **"Confirmation Order"** shall mean the Final Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22.** **"Contested"** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.23.** **"Creditor"** shall mean any Person who holds a Claim against the Debtor.

**1.24.** **"Debtor"** shall mean GRCDallasHomes, LLC in its capacity as a debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

**1.25.** **"Disclosure Statement"** shall mean the disclosure statement (including all exhibits and schedules thereto or referenced therein) relating to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018.

**1.26.** **"Disputed Claim"** shall mean any Claim or portion of a Claim not otherwise Allowed or paid pursuant to the Plan or Final Order of the Bankruptcy Court (i) which has been or hereafter is listed on the Schedule of Liabilities as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or Final Order of the Bankruptcy Court, (ii) proof of which was required to be filed by Final Order of the Bankruptcy Court but as

to which a proof of Claim was not timely or properly filed, (iii) that is disputed in accordance with the provisions of the Plan, (iv) which Claim is identified by the Debtor as being subject to section 502(d) of the Bankruptcy Code, or (v) as to which the Debtor or the Reorganized Debtor, as the case may be, have interposed a timely objection.

1.27. **"Effective Date"** shall mean the first business day which is at least thirty (30) days following entry of the Confirmation Order, unless a stay of the Confirmation Order is obtained, in which event the Effective Date shall be the first business day which is at least thirty (30) days following entry of a Final Order dissolving the stay.

1.28. **"Estate"** shall mean the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

1.29. **"Executory Contract"** shall mean a contract to which the Debtor is a party which is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.30. **"Fee Claim"** shall mean a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

1.31. **"Filed"** shall mean delivered to the Clerk of the Bankruptcy Court.

1.32. **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been stayed or reversed, and as to which the time to appeal or seek review or rehearing has expired and to which no appeal or petition for review or rehearing was filed, or if filed, remains pending.

1.33. **"General Unsecured Claim"** shall mean a Claim which: (i) is not entitled to priority under section 507(a) of the Bankruptcy Code; (ii) is not secured by a validly perfected enforceable lien or interest under sections 101(37), (50) and (51) of the Bankruptcy Code; (iii) arises from the rejection of an unexpired lease or executory contract; or (iv) represents the unsecured portion of an Allowed Claim of a Creditor.

1.34. **"Impaired"** shall mean, when used with reference to a Claim or Interest, a Claim or Interest which is impaired within the meaning of section 1124 of the Bankruptcy Code and will not be receiving payment in full of its Claim or Interest pursuant to the Plan.

1.35. **"Lien"** shall mean a lien, security interest, mortgage, deed of trust, or other charge or encumbrance on or in any real or personal property owned by the Debtor and that may secure payment of a debt or performance of an obligation of the Debtor or a third party.

1.36. **"Person"** shall mean any individual, corporation, partnership, association, limited liability company, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any subdivision thereof, committee, and any other entity.

1.37. **"Petition Date"** shall mean May 3, 2019, the date upon which the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.38.** **"Plan"** shall mean this Chapter 11 plan of reorganization, and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained herein, and shall include the Plan Supplement, if any.

**1.39.** **"Plan Agent"** shall mean Christopher J. Moser or, if Mr. Moser does not accepted, then a current or former Chapter 7 Panel Trustee in either the Northern or Eastern District of Texas shall be selected by Debtor within seven (7) days following Confirmation.

**1.40.** **"Pre-petition"** shall mean prior to the Petition Date.

**1.41.** **"Priority Tax Claim"** shall mean a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.42.** **"Pro Rata"** shall mean the proportion that an Allowed Claim or Allowed Interest in a particular class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such class, including Disputed Claims, unless the Plan provides otherwise.

**1.43.** **"Professional"** shall mean any professional employed in the Bankruptcy Case pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

**1.44.** **"Professional Fee Claim"** shall mean a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Confirmation Date.

**1.45.** **"Property of the Estate"** shall mean all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.46.** **"Rejection Claim"** shall mean a Claim arising from the rejection of an Executory Contract or Unexpired Lease by the Debtor or Reorganized Debtor.

**1.47.** **"Reorganized Debtor"** shall mean GRCDallasHomes, LLC on and after the Effective Date.

**1.48.** **"Schedule of Liabilities"** shall mean the schedule of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by the Debtor, as such schedules or statements may be amended or supplements from time to time in accordance with Bankruptcy Rule 1009 or other order of the Bankruptcy Court.

**1.49.** **"Secured Claim"** shall mean a Claim that is secured by a Lien upon property, as provided for in a writing or by statute, of the bankruptcy estate, to the extent of the value, as of the Confirmation Date, of such Lien as determined by a Final Order of the Bankruptcy Court (i) pursuant to section 506 of the Bankruptcy Code, (ii) if applicable by section 1129(b) of the Bankruptcy Code, or (iii) as otherwise agreed upon in writing by the Debtor or Reorganized Debtor and the holder of such Claim.

**1.50.** **"Secured Creditor" or "Secured Claimant"** shall mean any Claimant holding a Secured Claim.

**1.51.** **"Taxing Authorities"** shall mean (i) Dallas County Tax Assessor; (ii) Denton County Tax Assessor; (iii) Tarrant County Tax Assessor; (iv) Carrollton-Farmers Branch ISD; (v) City of Highland Village; (vi) Arlington ISD; (vii) City of Carrollton; and (viii) Lewisville ISD.

**1.52.** **"Unexpired Lease"** shall mean, collectively, any unexpired lease or agreement relating to the Debtor's interest in real or personal property.

**1.53.** **"Unimpaired"** shall mean not Impaired.

**1.54.** **"Unsecured Claim"** shall mean any Claim against the Debtor which is not a Secured Claim, Ad Valorem Tax Claim, Administrative Claim, Professional Fee Claim, or Interest.

**1.55.** **"Unsecured Claimants" or "Unsecured Creditors"** shall mean any holder of an Unsecured Claim.

**1.56.** **"Voidable Transfer"** shall mean all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.57.** **Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.58.** **Terms Defined in the Bankruptcy Code.** Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.59.** **Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.60.** **Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II
## GENERAL TERMS AND CONDITIONS

**2.01.** <u>**Treatment of Claims.**</u> This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**2.02.** <u>**Time for Filing Claims.**</u> The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the

Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a Voidable Transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**2.03.    Modification to the Plan.**  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.    Classification and Treatment Claims and Interests**

All Claims and Interests, except Administrative Claims, Professional Fee Administrative Claims, and Priority Unsecured Tax Claims are placed in the Classes set forth below, in accordance with section 1123(a)(1) of the Bankruptcy Code.

**3.01.    Administrative Claims.**  Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided, however*, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor shall pay or have paid in full all Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. §1930. All fees payable pursuant to 28 U.S.C. §1930 after the Effective Date shall be paid by the Reorganized Debtor when they are due until the Bankruptcy

Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law. Nothing herein shall require Dallas County to file an administrative expense claim or request for payment.

**3.02. Professional Fee Administrative Claims.** All persons that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**3.03. Treatment of Allowed Administrative Expenses.** Allowed Administrative Expenses will be paid in full once Allowed, on or before the Effective Date, or at a later date as set by the Court if the allowance process extends beyond the Effective Date. Provided, however, that the holder of an Allowed Administrative Expense may agree to a different treatment.

**3.04. Treatment of Allowed Priority Tax Claims.** Allowed Priority Tax Claims will be paid by the Reorganized Debtor, once Allowed, over five (5) years with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

**3.05. Title 28 U.S.C. Section 1930 Fees.** Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

**3.06. Class 1 / Allowed Secured Ad Valorem Tax Claims of Taxing Authorities**. Class 1 shall consist of the Allowed Secured Ad Valorem Tax Claim of the Taxing Authorities on the Debtor's real property which accrued on or prior to May 3, 2019 (the "**Class 1 Claims**").

a. Impairment and Voting. Class 1 Claims are impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

b. Treatment. The holders of Class 1 Claims shall be paid in full over 60 months following the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 1 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. Such default must be cured by the Debtor within 10 business days of

the date of transmission of such notice of default. In the event the default is not cured, the Class 1 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Class 1 Claimants shall provide a notice of default to Debtor's counsel by facsimile or email. The Class 1 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 1 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default. All liens shall be retained to secure the taxes owed.

c.   In the event of a sale of real property all Class 1 Claims secured against the real property being sold shall be paid in full at closing in exchange for a release of the associated lien.

**3.07.   Class 2 / Allowed Priority Claim of the Internal Revenue Service**.   Class 2 shall consist of the Allowed Priority Claim of the Internal Revenue Service which accrued on or prior to May 3, 2019 (the "**Class 2 Claims**") in the estimated amount of $1,000.00.

a.   <u>Impairment and Voting</u>.   Class 2 Claims are impaired by the Plan.  The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

b.   <u>Treatment</u>.   The holders of Class 2 Claims shall be paid in full over 60 months following the Confirmation Date. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 12.0% per annum following the Effective Date until paid in full. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. Such default must be cured by the Debtor within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Class 2 Claimants shall provide a notice of default to Debtor's counsel by facsimile or email.  The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

c.   In the event of any sale, Class 2 Claims shall be paid in full at closing after all claims secured against the property sold.

**3.08.   Class 3 / Allowed Secured Claim of Statebridge – 6012 Mayes Place**.   Class 3 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 6012 Mayes Place, The Colony, Texas 75065, which accrued on or prior to May 3, 2019 (the "**Class 3 Claims**") in the estimated amount of $153,456.66.

a. <u>Impairment and Voting</u>. Class 3 Claims are impaired by the Plan. The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>. The holders of Class 3 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c. Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d. In the event of a sale of 6012 Mayes Place, Class 3 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e. All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**3.09. Class 4 / Allowed Secured Claim of Statebridge – 1005 Shady Lane**. Class 4 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 1005 Shady Lane, Keller, Texas 76428, which accrued on or prior to May 3, 2019 (the "**Class 4 Claims**") in the estimated amount of $174,818.45.

a. <u>Impairment and Voting</u>. Class 4 Claims are impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>. The holders of Class 4 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in

full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c. Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d. In the event of a sale of 1005 Shady Lane, Class 4 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e. All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**3.10. Class 5 / Allowed Secured Claim of Statebridge – 4437 Jenkins**. Class 5 shall consist of the Allowed Secured Claims of Statebridge on the Debtor's real property commonly known as 4437 Jenkins, The Colony, Texas, which accrued on or prior to May 3, 2019 (the "**Class 5 Claims**") in the estimated amount of $\underline{\$107,000.00}$.

a. <u>Impairment and Voting</u>. Class 5 Claims are impaired by the Plan. The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>. The holders of Class 5 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Statebridge at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Statebridge for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c. Statebridge shall retain its lien to secure its claim until paid in full under this Plan.

d.      In the event of a sale of 4437 Jenkins, Class 5 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e.      All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**3.11.   Class 6 / Allowed Secured Claim of Wells Fargo Mortgage – 2046 Greenstone**.   Class 6 shall consist of the Allowed Secured Claims of Wells Fargo Mortgage on the Debtor's real property commonly known as 2046 Greenstone Trail, Carrollton, Texas 75010, which accrued on or prior to May 3, 2019 (the "**Class 6 Claims**") in the estimated amount of <u>$128,694.52</u>.

a.      <u>Impairment and Voting</u>.   Class 6 Claims are impaired by the Plan.   The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

b.      <u>Treatment</u>.   The holders of Class 6 Claims shall be paid in full over 60 months (or stated as 5 years), with interest at a rate of 5.5% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 30-year amortization; the payments shall be made as if on a standard 30-year note, with a balloon payment coming due at the end of the 60 months (or stated as 5 years). The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the Secured Claim is paid in full. There is a balloon payment due to Wells Fargo Mortgage at the end of the Plan Term; at the end of the 60 months, a balloon payment balance is due after 5 years or 60 months to Wells Fargo Mortgage for the remaining balance of the Allowed Secured Claim. The balloon payment will be funded by a refinance of the debt or sale of the property. Should the balloon payment not be made the Debtor, the Debtor will default and the Debtor will permit the Secured Creditor to foreclose on the property that serves as its collateral.

c.      Wells Fargo Mortgage shall retain its lien to secure its claim until paid in full under this Plan.

d.      In the event of a sale of 2046 Greenstone, Class 6 Claims shall be paid in full at closing in exchange for a release of its lien. There shall be no prepayment penalty.

e.      All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**3.12.   Class 7 / Allowed Claim of Touba Daneshmandi**.   Class 7 shall consist of the Allowed Claim of Touba Daneshmandi, secured on the Debtor's real property, for a business loan, which accrued on or prior to May 3, 2019 (the "**Class 7 Claims**") in the estimated amount of <u>$1,187,863.00</u>.

a. <u>Impairment and Voting</u>.  The Class 7 Claim is impaired by the Plan.  The holder of the Class 7 Claim is **<u>not</u>** entitled to vote to accept or reject the Plan as Touba Daneshmandi is an insider to the Debtor.

b. <u>Treatment</u>.  The holder of the Class 7 Claim shall be paid in full prior to the expiration of 60 months from the Confirmation Date. On the occurrence of a sale of real property, the holder of the Class 7 Claim shall be paid from the Creditor's Pool along with the Class 8 Allowed Claims based on fifty (50) percent of the Allowed Claim Amount until the Class 7 Claim is paid in full.

c. ALL terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

**3.13.**  **<u>Class 8 / Allowed General Unsecured Claims</u>**.  Class 8 shall consist of Allowed General Unsecured Claims and is estimated to be approximately <u>$1,454,956.29</u>. The Debtor has not filed claims objections and may object to certain of the unsecured claims.

a. <u>Impairment and Voting</u>.  Class 8 is impaired by the Plan.  The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

b. <u>Treatment</u>.  Each holder of an Allowed General Unsecured Claim shall be paid their pro-rata share from the Creditor's Pool along with the Class 7 Allowed Claim based on fifty percent of the Allowed Claim Amount until the Class 8 Claims are paid in full.

Class 8 Claims shall receive payments under the Plan as soon as possible after payments to senior secured Allowed Creditor Classes. The Plan projects to pay such claims at a rate of 50% of each Allowed General Unsecured Claim.

**3.14.**  **<u>Class 9 / Allowed Equity Interests</u>**.  Class 9 shall consist of all Allowed Interests in the Debtor.

a. <u>Impairment and Voting</u>.  Class 9 are not impaired by the Plan. And are not entitled to vote to accept or reject the Plan. Members of the Debtor shall retain their interest in the Debtor post-confirmation.

**B.**  **Voting and Impairment of Classes**

**Voting Classes**.  Classes of Claims 1, 2, 3, 4, 5, 6, and 8 are impaired by the Plan and shall be entitled to vote to accept or reject the Plan.

**Deemed Acceptance**.  The Class 7 Claim is also impaired by the Plan but shall not be entitled to vote to accept or reject the Plan.

**Confirmability of the Plan**.  The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied with respect to the Debtor and the Plan. If the Bankruptcy Court determines that any provision of the Plan is prohibited by the Bankruptcy Code, or renders the Plan not confirmable under section 1129 of the Bankruptcy Code, the Debtor reserves the

right to sever such provision from the Plan and to request that the Plan be confirmed as so modified.

# ARTICLE IV
## MEANS OF EXECUTION AND IMPLEMENTATION

**4.01.** <u>**Corporate Existence; Continuation**</u>.  On and after the Effective Date, the Debtor shall continue in existence as GRCDALLASHOMES LLC, a limited liability company formed under the laws of the State of Texas. As set forth above, the holder of the Allowed Interests shall remain subject to the conditions of this Plan, specifically the appointment of the Plan Agent as set forth below.

**4.02.** <u>**Vesting of Assets; Operational Rights**</u>.  On and after the Effective Date, all property of the estate shall revest in the Reorganized Debtor. Subject to the terms of this Plan and the Confirmation Order, the Reorganized Debtor may operate its business and use, acquire and dispose of all such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court, and shall be free and clear of all claims liens, debts, liabilities, charges, interests, and other encumbrances except as specifically provided in the Plan or the Confirmation Order.

**4.03.** <u>**Plan Agent**</u>.  Under the terms of this Plan, Christopher J. Moser will serve as the Plan Agent for Debtor's estate. Christopher J. Moser shall notify the Debtor and its counsel of his intent to perform the Plan Agent duties no later than the first date set for Confirmation of Debtor's Plan. If Mr. Moser does not accept, then a current or former Chapter 7 Panel Trustee in either the Northern or Eastern District of Texas shall be selected by Debtor. The Plan Agent shall be designated within seven (7) days following Confirmation.

**4.04.** <u>**Duties & Powers of the Plan Agent**</u>. Following Confirmation and upon designation, the Plan Agent shall assist in the orderly liquidation of the real property assets of the Debtor for the purpose of maximizing the liquidation value of each asset for the benefit of the Claimants herein. The Plan Agent shall perform the following duties, and be vested with only such powers as are necessary to complete such performance:

 **4.04.1.** Plan Agent shall assist the Debtor in valuing each real property asset of the Debtor. Plan Agent shall along with the Debtor use reasonable business judgment to select a course of action for each property (e.g., rehabilitation, repair, auction, market sale, etc.).

 **4.04.2.** Plan Agent along with the Debtor shall be vested with the authority to and responsible for retaining a real estate broker for each sale, selecting a list price based upon the advice of the broker, and determining when and whether to accept an offer made on each property.

 **4.04.3.** All sale proceeds shall be deposited in the Debtor's account. From these funds the Plan Agent shall establish a Creditor's Pool to pay the Class 7 and 8 creditors with Allowed Claims.  The Creditor's Pool will be funded from sales of the Debtor's properties, less costs of sales, costs of rehab and

repair (if any), taxes, Allowed Secured Creditor Claims and mortgages and Allowed Administrative Fees and Costs. The remaining funds shall comprise the Creditor's Pool for pro-rata payment to the Class 7 and Class 8 Creditors with Allowed Claims.

4.04.4. Plan Agent shall make sure that all distributions called for by this Plan to creditors with Allowed Claims are made in a timely fashion and are properly accounted for.

4.04.5. Plan Agent shall persist in his role until such time as all sales proceeds have been collected and distributed to Claimants as prescribed by this Plan to make sure that creditors with Allowed Claims get paid as called for by the Plan.

4.05. **Compensation of Plan Agent**. The Plan Agent shall be compensated at a rate of $350.00 per hour from available funds of the Debtor for services rendered following the Effective Date. In the absence of other intervening orders, the Plan Agent shall have the option to apply for modification of the compensation paid to him.

4.06. **Effectuating Documents**. Except for authorities vested in the Plan Agent by the Plan, the Reorganized Debtor shall be authorized, without any further action of the Bankruptcy Court, without the consent or approval of any other party, and without any further act or action under applicable law, regulation, order or rule, to execute, deliver, file or record such contracts, instruments, release, and other agreements or documents and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

4.07. **Retention of Avoidance Actions and Causes of Action**. The Reorganized Debtor shall retain, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall prosecute as appropriate all causes of action belonging to the bankruptcy estate pursuant to section 541 of the Bankruptcy Code. All creditors and parties in interest are hereby placed on notice that despite any provision which may be contained in this Plan providing for satisfaction of claims, if a Claim is Allowed, any and all rights are reserved to commence, prosecute to judgment, and to collect upon any cause of action listed in the Schedule of Liabilities or Statement of Affairs as an asset of the bankruptcy estate of the Debtor or which are referenced herein or in the Disclosure Statement.

4.08. **Deadline for Filing Administrative Claims and Professional Fee Administrative Claims**. Subject to further order of the Bankruptcy Court, all applications for payment of Professional Fee Administrative Claims shall be filed with the Bankruptcy Court within thirty (30) days of the Effective Date.

4.09. **Deadline for Objections to Claims**. Any and all objection to claims filed prior to the Effective Date shall be filed with the Bankruptcy Court and served upon the holder of such Claim on or before thirty (30) days after the Effective Date, (the "**Claim Objection Bar Date**"), or be forever barred from filing such an objection. The Debtor shall be authorized to settle any objection to a Claim without any additional order of the Bankruptcy Court, requirement to utilize Rule 9019 of the Federal Rules of Bankruptcy Procedure, or to notice any other party in interest.

The Debtor shall be the only party entitled to object to the allowance of a Claim. Nothing in any prior order of the Court shall bar an objection to claim from being filed under this Plan.

**4.10.** **Disputed Claim Allowance and Payment.** Notwithstanding any other term or condition of the Plan, disputed, unliquidated, and/or contingent Claim to which an objection has been filed prior to the Claim Objection Bar Date, shall be paid only upon allowance in accordance with the provisions of Section 502 of the Bankruptcy Code or upon Final Order of the Bankruptcy Court. For purposes of calculating distributions to be made under the Plan the amount of the total Allowed Claims in any Class shall be computed as if any Disputed Claim still outstanding on the date of such distribution had been "allowed" in the full amount thereof. The funds held on account of any Disputed Claim shall be disbursed in accordance with the Final Order which allows or disallows such Claim.

**4.11.** **Preservation of Claims and Causes of Action**. Debtor expressly reserves all of its rights to pursue causes of action and all such causes of action are preserved. Except as otherwise released pursuant to the Plan, all Claims recoverable under Chapter 5 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor. Nothing in the Plan shall act as a bar as it relates to any claims of the Estate against third parties, except as expressly released pursuant to the Plan or as time-barred, precluded or released under the Court's final order authorizing use of cash collateral. Nothing in this Plan or the confirmation of the Plan shall otherwise estop the Debtor from asserting claims against third parties.

The Debtor does reserve the right to object to claims of creditors that are overstated. Such issues may be raised in the context of objections to claims in this case.

All claims and causes of action are preserved as follows: Except as otherwise released pursuant to the Plan or otherwise barred or released pursuant to the Final Cash Collateral Order, any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) a Cause of Action; and (iii) to the extent not included in the term Cause of Action, any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, misuse of collateral, negligent loan origination, processing, banking, and administration, violations of statutes and regulations of governmental entities, securities and antitrust violations, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the

Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules, and shall include any claims whether or not referenced in any disclosure statement filed in this case. Such claims may be identified in more detail in the Disclosure Statement and on the Schedules filed in this case. Nothing shall estop the Debtor or Reorganized Debtor from asserting claims or causes of action just because they were not scheduled or described in detail in the Debtor's Schedules or Disclosure Statement. The Debtor is not releasing any claims under the Plan.

No distributions under the Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because Judge asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of *such offset or* recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01.** __Assumption of Executory Contracts and Unexpired Leases__. Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all by separate Motions unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date. All contracts not assumed shall be rejected.

**5.02.** __Reservation of Rights__. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**5.03.** __Bar Date for Claims Based On Rejection__. If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the month in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE VI
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**6.01.** **The Debtor's Causes of Action.** Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor from asserting any claim or cause of action whether disclosed or not.

**6.02.** **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE VII
## EFFECT OF CONFIRMATION

**7.01** **Discharge and Release of Debtor.** Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**7.02** **Legal Binding Effect.** The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**7.03** **Discharge.** Confirmation of the Plan shall result in the inability to commence or

continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor. Claims against non-debtors tied to the Debtor as well shall be treated under this Plan and such Claimants shall be enjoined from collecting on such claims based on the Debtor providing for treatment of such claims under this Plan.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid in full through the Plan. Such restraint shall be consistent with the discharge granted to the Debtor in connection with confirming its Plan as called for by the Code.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.01     **Request for Relief Under Bankruptcy Code Section 1129.**  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Debtor reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

8.02     **Revocation**.  The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

8.03     **Effect of Withdrawal or Revocation.**  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

8.04     **Due Authorization by Creditors.**  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**8.05**    **Entire Agreement.**  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**8.06**    **Section 1146 Exemption.**  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**8.07**    **Provisions Governing Distributions.**  All payments and distributions under the Plan shall be made by the Debtor as indicated.  Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**8.08.**    **Prepayment.**  Except as otherwise provided in the Plan or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of any Allowed Claim at any time; *provided, however,* that any such prepayment shall not violate or otherwise prejudice the relative priorities and parities among the Classes of Claims.

**8.09.**    **Interest, Penalties, and Fees.** Except as expressly stated in the Plan, or allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge is to be 'allowed' on any Claim subsequent to the Petition Date. No attorneys' fees will be paid with respect to any Claim except as specified in the Plan or as allowed by Final Order of the Bankruptcy Court.

**8.10.**    **Governing Law.**    Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**8.11.**    **Binding Effect.**    Except as otherwise expressly provided in the Plan, on and after the Effective Date, the terms of the Plan shall bind all holders of Claims and Interests, whether or not such holders of Claims and Interests accept the Plan.  The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon and shall inure to the benefit of such Person and its respective successors and assigns.

**8.12.**    **Default**.  Unless otherwise stated in this Plan, if the Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property.

**8.13.**    **Notices.**  Any notice required or permitted under the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, addressed to the following parties:

> Joyce Lindauer
> Joyce W. Lindauer Attorney, PLLC
> 12720 Hillcrest Road, Suite 625
> Dallas, Texas  75230
>
> GRCDALLASHOMES LLC
> c/o Kazem Daneshmandi
> 13220 Beach Club Road
> The Colony, Texas 75056

## ARTICLE IX
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**9.01**    **Allowance of Claims.**    To hear and determine the allowability of all Claims upon objections to such Claims.

**9.02    Executory Contracts and Unexpired Leases Proceedings.**    To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**9.03    Plan Interpretation.**    To resolve controversies and disputes regarding the interpretation of the Plan.

**9.04    Plan Implementation.**    To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**9.05    Plan Modification.**    To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**9.06    Adjudication of Controversies.**    To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**9.07    Injunctive Relief.**    To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**9.08    Interpleader Action.**    To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**9.09    Correct Minor Defects.**    To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**9.10    Authorization of Fees and Expenses.**    To review and authorize payment of professional fees incurred prior to the Effective Date.

**9.11    Post-Confirmation Orders Regarding Confirmation.**    To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**9.12    Final Decree.**    To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Dated: September 9, 2019

Submitted by:

  _/s/ Joyce W. Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
Telephone:    (972) 503-4033
Facsimile:    (972) 503-4034
Email: joyce@joycelindauer.com
       jeff@joycelinduar.com
**ATTORNEYS FOR DEBTOR**


  _/s/ Kazem Daneshmandi_
Kazem Daneshmandi, _Member_

# Eastern District of Texas
## Claims Register

### 19-41186 GRCDallasHomes LLC

**Judge:** Brenda T. Rhoades    **Chapter:** 11
**Office:** Sherman    **Last Date to file claims:** 09/03/2019
**Trustee:**    **Last Date to file (Govt):** 10/30/2019

---

| Creditor: (7687586) Denton County c/o Tara LeDay P. O. Box 1269 Round Rock, TX 78680-1269 | **Claim No: 1** *Original Filed Date*: 05/07/2019 *Original Entered Date*: 05/07/2019 *Last Amendment Filed*: 05/29/2019 *Last Amendment Entered*: 05/29/2019 | *Status:* *Filed by:* CR *Entered by:* Tara LeDay *Modified:* |
|---|---|---|

| Amount | claimed: | $32880.63 | | |
| Secured | claimed: | $32880.63 | | |

History:

| Details | | 1-1 | 05/07/2019 | Claim #1 filed by Denton County, Amount claimed: $3099.25 (LeDay, Tara) |
| Details | | 1-2 | 05/29/2019 | Amended Claim #1 filed by Denton County, Amount claimed: $32880.63 (LeDay, Tara) |

Description:

Remarks:

---

| Creditor: (7687749) Carrollton-Farmers Branch ISD c/o Perdue Brandon Fielder et al 500 East Border Street, Suite 640 Arlington, TX 76010 | **Claim No: 2** *Original Filed Date*: 05/07/2019 *Original Entered Date*: 05/07/2019 | *Status:* *Filed by:* CR *Entered by:* Eboney Cobb *Modified:* |
|---|---|---|

| Amount | claimed: | $8306.11 | | |
| Secured | claimed: | $8306.11 | | |

History:

| Details | | 2-1 | 05/07/2019 | Claim #2 filed by Carrollton-Farmers Branch ISD, Amount claimed: $8306.11 (Cobb, Eboney) |

Description:

Remarks:

---

| Creditor: (7687750) City of Highland Village c/o Perdue Brandon Fielder et al 500 East Border Street, Suite 640 Arlington, TX 76010 | **Claim No: 3** *Original Filed Date*: 05/07/2019 *Original Entered Date*: 05/07/2019 | *Status:* *Filed by:* CR *Entered by:* Eboney Cobb *Modified:* |
|---|---|---|

| Amount | claimed: | $2582.07 | | |
| Secured | claimed: | $2582.07 | | |

History:

| Details | | 3-1 | 05/07/2019 | Claim #3 filed by City of Highland Village, Amount claimed: $2582.07 (Cobb, Eboney) |

Description:

Remarks:

---

# EXHIBIT "2"

| Creditor: (7687751) | Claim No: 4 | Status: |
|---|---|---|
| Arlington ISD | Original Filed Date: 05/07/2019 | Filed by: CR |
| c/o Perdue Brandon Fielder et al | Original Entered | Entered by: Eboney Cobb |
| 500 East Border Street, Suite 640 | Date: 05/07/2019 | Modified: |
| Arlington, TX 76010 | | |

| Amount | claimed: | $3082.67 | ||| |
|---|---|---|---|
| Secured | claimed: | $3082.67 | ||| |

History:

| Details | | 4-1 | 05/07/2019 | Claim #4 filed by Arlington ISD, Amount claimed: $3082.67 (Cobb, Eboney) |
|---|---|---|---|---|

Description:

Remarks:

---

| Creditor: (7688314) | Claim No: 5 | Status: |
|---|---|---|
| Dallas County | Original Filed Date: 05/07/2019 | Filed by: CR |
| Linebarger, Goggan, Blair & Sampson, LLC | Original Entered | Entered by: Laurie A. Spindler |
| c/o Laurie A. Spindler | Date: 05/07/2019 | Modified: |
| 2777 N. Stemmons Freeway Suite 1000 | | |
| Dallas, TX 75207 | | |

| Amount | claimed: | $12378.56 | ||| |
|---|---|---|---|
| Secured | claimed: | $12378.56 | ||| |

History:

| Details | | 5-1 | 05/07/2019 | Claim #5 filed by Dallas County, Amount claimed: $12378.56 (Spindler, Laurie) |
|---|---|---|---|---|

Description:

Remarks:

---

| Creditor: (7688332) | Claim No: 6 | Status: |
|---|---|---|
| Tarrant County | Original Filed Date: 05/07/2019 | Filed by: CR |
| Linebarger, Goggan, Blair & Sampson, LLC | Original Entered | Entered by: Laurie A. Spindler |
| c/o Laurie A. Spindler | Date: 05/07/2019 | Modified: |
| 2777 N. Stemmons Freeway Suite 1000 | | |
| Dallas, TX 75207 | | |

| Amount | claimed: | $15875.45 | ||| |
|---|---|---|---|
| Secured | claimed: | $15875.45 | ||| |

History:

| Details | | 6-1 | 05/07/2019 | Claim #6 filed by Tarrant County, Amount claimed: $15875.45 (Spindler, Laurie) |
|---|---|---|---|---|

Description:

Remarks:

---

| Creditor: (7688334) | Claim No: 7 | Status: |
|---|---|---|
| City of Carrollton | Original Filed Date: 05/07/2019 | Filed by: CR |
| Linebarger, Goggan, Blair & Sampson, LLC | Original Entered | Entered by: Laurie A. Spindler |
| c/o Laurie A. Spindler | Date: 05/07/2019 | Modified: |
| 2777 N. Stemmons Freeway Suite 1000 | Last Amendment | |
| Dallas, TX 75207 | Filed: 06/07/2019 | |
| | Last Amendment | |
| | Entered: 06/07/2019 | |

| Amount | claimed: | $3471.96 | ||| |
|---|---|---|---|
| Secured | claimed: | $3471.96 | ||| |

History:

| Details | 7-1 | 05/07/2019 | Claim #7 filed by City of Carrollton, Amount claimed: $2045.48 (Spindler, Laurie) |
|---|---|---|---|
| Details | 7-2 | 06/07/2019 | Amended Claim #7 filed by City of Carrollton, Amount claimed: $3471.96 (Spindler, Laurie) |

Description:

Remarks:

| Creditor: (7688337) | Claim No: 8 | Status: |
|---|---|---|
| Lewisville ISD | Original Filed Date: 05/07/2019 | Filed by: CR |
| Linebarger, Goggan, Blair & Sampson, LLC | Original Entered | Entered by: Laurie A. Spindler |
| c/o Laurie A. Spindler | Date: 05/07/2019 | Modified: |
| 2777 N. Stemmons Freeway Suite 1000 | Last Amendment | |
| Dallas, TX 75207 | Filed: 06/07/2019 | |
| | Last Amendment | |
| | Entered: 06/07/2019 | |

| Amount | claimed: | $29196.65 | |
|---|---|---|---|
| Secured | claimed: | $29196.65 | |

History:

| Details | 8-1 | 05/07/2019 | Claim #8 filed by Lewisville ISD, Amount claimed: $21793.68 (Spindler, Laurie) |
|---|---|---|---|
| Details | 8-2 | 06/07/2019 | Amended Claim #8 filed by Lewisville ISD, Amount claimed: $29196.65 (Spindler, Laurie) |

Description:

Remarks:

---

| Creditor: (7684963) | Claim No: 9 | Status: |
|---|---|---|
| Internal Revenue Service | Original Filed Date: 05/09/2019 | Filed by: CR |
| Centralized Insolvency | Original Entered | Entered by: Mikeal Smith |
| PO Box 7346 | Date: 05/09/2019 | Modified: |
| Philadelphia, PA 19101-7346 | | |

| Amount | claimed: | $1000.00 | |
|---|---|---|---|
| Secured | claimed: | $0.00 | |
| Priority | claimed: | $1000.00 | |

History:

| Details | 9-1 | 05/09/2019 | Claim #9 filed by Internal Revenue Service, Amount claimed: $1000.00 (Smith, Mikeal) |
|---|---|---|---|

Description:

Remarks:

---

| Creditor: (7684969) | Claim No: 10 | Status: |
|---|---|---|
| Robert Saldeen | Original Filed Date: 06/14/2019 | Filed by: CR |
| 4217 Malone Ave | Original Entered | Entered by: kms |
| The Colony, TX 75056 | Date: 06/14/2019 | Modified: |

| Amount | claimed: | $175000.00 | |
|---|---|---|---|

History:

| Details | 10-1 | 06/14/2019 | Claim #10 filed by Robert Saldeen, Amount claimed: $175000.00 (kms) |
|---|---|---|---|

Description:

Remarks:

---

| Creditor: (7742758) | Claim No: 11 | Status: |
|---|---|---|
| John D. Caldwell | Original Filed Date: 08/12/2019 | Filed by: CR |
| c/o Nicoud Law | Original Entered | Entered by: Robert M. Nicoud, Jr. |
| 10440 N. Central Expressway | Date: 08/12/2019 | Modified: |
| Suite 800 | | |
| Dallas, TX 75231 | | |

| Amount | claimed: | $606945.32 | |
|---|---|---|---|

History:

| Details | 11-1 | 08/12/2019 | Claim #11 filed by John D. Caldwell, Amount claimed: $606945.32 (Nicoud, Robert) |
|---|---|---|---|

Description:

Remarks:

| Creditor: (7684955)<br>Bryan Wing Cheung Poon<br>c/o Kevin G. Herd<br>801 Cherry Street, Suite 1010<br>Fort Worth, TX 76102 | Claim No: 12<br>Original Filed Date: 08/30/2019<br>Original Entered<br>Date: 08/30/2019 | Status:<br>Filed by: CR<br>Entered by: Kevin G. Herd<br>Modified: |
|---|---|---|

Amount claimed: $512276.84

History:

| Details | 12-1 | 08/30/2019 | Claim #12 filed by Bryan Wing Cheung Poon, Amount claimed: $512276.84 (Herd, Kevin) |
|---|---|---|---|

Description: (12-1) Money loaned

Remarks:

---

| Creditor: (7755726)<br>Wells Fargo Bank, N.A.<br>Attn: Default Document Processing<br>MAC# N9286-01Y, 1000 Blue Gentian Road<br>Eagan, MN 55121-7700 | Claim No: 13<br>Original Filed Date: 09/03/2019<br>Original Entered<br>Date: 09/03/2019 | Status:<br>Filed by: CR<br>Entered by: Gwendolyn Kay Mills<br>Modified: |
|---|---|---|

Amount claimed: $128694.52

Secured claimed: $128694.52

History:

| Details | 13-1 | 09/03/2019 | Claim #13 filed by Wells Fargo Bank, N.A., Amount claimed: $128694.52 (Mills, Gwendolyn) |
|---|---|---|---|

Description: (13-1) 936,xxxxxx0368,128694.52

Remarks:

---

| Creditor: (7755848)<br>Khavari & Moghadassi, Attorneys at Law, P.C<br>Attn: Rod Khavari<br>3000 Keller Springs Road<br>Suite 200<br>Carrollton, TX 75006 | Claim No: 14<br>Original Filed Date: 09/03/2019<br>Original Entered<br>Date: 09/03/2019 | Status:<br>Filed by: CR<br>Entered by: Joyce W. Lindauer<br>Modified: |
|---|---|---|

Amount claimed: $13513.25

History:

| Details | 14-1 | 09/03/2019 | Claim #14 filed by Khavari & Moghadassi, Attorneys at Law, P.C, Amount claimed: $13513.25 (Lindauer, Joyce) |
|---|---|---|---|

Description: (14-1) Legal Fees

Remarks:

---

| Creditor: (7756302)<br>Floors Expert Inc.<br>Art Lopez<br>7525 Main St. #120<br>The Colony, TX 75056 | Claim No: 15<br>Original Filed Date: 09/03/2019<br>Original Entered<br>Date: 09/04/2019 | Status:<br>Filed by: CR<br>Entered by: kms<br>Modified: |
|---|---|---|

Amount claimed: $28778.97

History:

| Details | 15-1 | 09/03/2019 | Claim #15 filed by Floors Expert Inc., Amount claimed: $28778.97 (kms) |
|---|---|---|---|

Description:

Remarks:

*Creditor:* (7684974)
Touba Daneshmandi
13220 Beach Club Rd
The Colony, TX 75056

**Claim No: 16**
*Original Filed Date:* 09/03/2019
*Original Entered*
*Date:* 09/04/2019

*Status:*
*Filed by:* CR
*Entered by:* kms
*Modified:*

| Amount | claimed: | $1187863.00 | | |
|---|---|---|---|---|
| Secured | claimed: | $1187863.00 | | |

*History:*

| | 16-1 | 09/03/2019 | Claim #16 filed by Touba Daneshmandi, Amount claimed: $1187863.00 (kms) |
|---|---|---|---|
| Details | | | |

*Description:*

*Remarks:*

## Claims Register Summary

**Case Name:** GRCDallasHomes LLC
**Case Number:** 19-41186
**Chapter:** 11
**Date Filed:** 05/03/2019
**Total Number Of Claims:** 16

| Total Amount Claimed* | $2761846.00 |
|---|---|
| Total Amount Allowed* | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| Secured | $1424331.62 | |
| Priority | $1000.00 | |
| Administrative | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/09/2019 13:50:38 | | | |
| **PACER Login:** | joycelindauer:2572695:0 | **Client Code:** | GRCDallas |
| **Description:** | Claims Register | **Search Criteria:** | 19-41186 Filed or Entered From: 1/1/2019 Filed or Entered To: 12/31/2019 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT "3"

| Property | VALUE LISTED IN SCHEDULES | CAD VALUE | CURRENT VALUE WITHOUT ADDITIONAL REPAIRS | REAL PROPERTY VALUATION | | PROJECTED VALUE POST-REPAIRS |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | ESTIMATED COST OF REPAIRS | ESTIMATED TIME UNTIL COMPLETED | |
| 3205 Oak Grove Parkway, Little Elm, TX | $ 90,000.00 | $ 24,216.00 | $ 24,216.00 | $ ~~50,000.00~~ | Recommend to Sell As-Is | $ 24,216.00 |
| 4430 Chapman, The Colony, TX | $ 130,000.00 | $ 140,000.00 | $ 130,000.00 | $ 20,000.00 | Work not yet Underway | $ 130,000.00 |
| 2029 Chatsworth, Carrollton, TX | $ 235,000.00 | $ 170,000.00 | $ 235,000.00 | $ 10,000.00 | Three Weeks | $ 265,000.00 |
| 2408 Jewell Drive, Arlington, TX | $ 180,000.00 | $ 205,790.00 | $ 180,000.00 | $ 30,000.00 | Three Months | $ 200,000.00 |
| 6012 Mayes, The Colony, TX | $ 185,000.00 | $ 205,000.00 | $ 185,000.00 | $ 20,000.00 | Work not yet Underway | $ 205,000.00 |
| 1005 Shady Lane, Keller, TX | $ 200,000.00 | $ 246,000.00 | $ 200,000.00 | $ 80,000.00 | Six Months | $ 400,000.00 |
| 7629 Lakeview, The Colony, TX | $ 90,000.00 | $ 120,000.00 | $ 90,000.00 | $ 80,000.00 | Six Months | $ 200,000.00 |
| 2046 Greenstone, Carrollton, TX | $ 275,000.00 | $ 245,000.00 | $ 275,000.00 | $ 20,000.00 | 2 Weeks | $ 300,000.00 |
| 203 Oak Street, Highland Village, TX | $ 200,000.00 | $ 205,000.00 | $ 200,000.00 | $ 70,000.00 | Six Months | $ 330,000.00 |
| 4369 Sunset Circle, The Colony, TX | $ 50,000.00 | $ 27,446.00 | $ 27,446.00 | $ ~~50,000.00~~ | Recommend to Sell As-Is | $ 27,446.00 |
| 1/3rd of 6900 Elliott, The Colony, TX* | $ 50,000.00 | $ 76,067.00 | $ 50,000.00 | 13,333.33 | | $ 70,000.00 |
| **TOTAL VALUES** | $ 1,685,000.00 | $ 1,664,519.00 | $ 1,596,662.00 | $ 343,333.33 | | $ 2,151,662.00 |

*All values based on 1/3rd of same